358 So.2d 759 (1977)
Randolph HARRISON
v.
STATE.
4 Div. 549.
Court of Criminal Appeals of Alabama.
August 16, 1977.
Rehearing Denied October 4, 1977.
After Remandment March 21, 1978.
Myron H. Thompson, Dothan, for appellant.
William J. Baxley, Atty. Gen. and Jane LeCroy Robbins, Asst. Atty. Gen. for the State.
*760 BOOKOUT, Judge.
Grand larceny; sentence: seven years imprisonment.
We have endeavored to set out the facts as accurately as possible considering that the record is replete with contradictions, unclear and confusing testimony. It appears from the record that on the night of January 14, 1977, Johnny M. Smith drove his 1969 green Chevrolet Impala to the Busy Bee Cafe in Houston County. Smith testified that he entered the cafe around midnight and did not leave until about two hours later, at which time he discovered his automobile was missing. Smith stated that he never gave anyone permission to remove his automobile from that location. He later found his car at a wrecker service in Headland, Alabama, where it had been taken after being abandoned by the appellant and his companion.
Johnny Bernard Rudolph, appellant's accomplice, testified that he and the appellant went to the Busy Bee Cafe the night of January 14 around eleven or twelve o'clock. He stated that he and several others, including the appellant and Smith, left in Smith's green Impala, but returned in a few minutes to the Busy Bee to play pool. Rudolph said that the appellant played one game of pool and then left. Rudolph left about five minutes later. He testified that he made no mention to the appellant that Smith's keys were left in the car. Rudolph left in Smith's car, saw the appellant walking down the street and offered him a ride. The appellant got in, and Rudolph drove to Headland, wrecking the automobile once in route. The car quit running in Headland.
Rudolph testified that the appellant did not know the car was stolen until "after it quit in Headland." When the car quit, Rudolph got out and attempted to take a battery from a nearby automobile belonging to a Mr. Faison. Mr. Faison saw Rudolph in the process of stealing the battery and yelled at him, whereupon Rudolph and the appellant fled on foot. Rudolph, age fifteen, testified that he later admitted stealing the car, entered a plea of guilty, and had been placed in a boys' correctional school.
The appellant testified that he, Rudolph and another companion went to the Busy Bee, played a couple of games of pool, and then went to another cafe next door after the Busy Bee closed. They met Johnny Smith and Johnny Richardson at the second cafe. Appellant testified that after a while, Richardson drove the appellant, Smith and Rudolph to the Scooter Store in Smith's car. He said that they returned to the cafe shortly and began playing pool. He testified that Rudolph came up to him and said something about Smith's car keys being left in the ignition, and that he, appellant, left about fifteen minutes later. Appellant stated that Rudolph pulled up behind him on the street in Smith's automobile and that he got in and asked Rudolph to take him home. Rudolph said he wanted to go to a Junior Food Store and then ride around, to which appellant agreed.
Rudolph drove the car into a telephone pole, and then drove on to Headland, where the car broke down. Appellant stated that Rudolph tried to take a battery from a car, but a man came out whom the appellant thought was armed, and they fled. He stated that the police came up as they were walking down Peachtree Street and that Rudolph threw the car keys into the bushes. Appellant said that the police ordered them to fall to the ground on their hands and knees, and then questioned them. The police later took them to the police station, and the appellant testified that he then decided to cooperate and that he assisted the police in finding the keys.
Officer Jesse Morgan, of the Headland Police Department, testified that he and another officer responded to a call from Mr. Faison early on the morning of January 15, and found a green 1969 Chevrolet Impala blocking the road. Mr. Faison described the man who had attempted to take the battery, and the officers began searching for him. They saw the appellant and Rudolph walking along Peachtree Street. The officers stopped the pair and, "took them into custody," because Rudolph fit the description which Mr. Faison had given them.
*761 Officer Morgan asked the two suspects several questions, then took them back to the abandoned automobile, became increasingly suspicious, then formally arrested the appellant on suspicion of grand larceny.
The only issue raised on appeal is whether the trial court committed reversible error in allowing into evidence a statement of a somewhat inculpatory nature by the appellant, without having apprised him of his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In criminal trials, the prosecution may not use inculpatory statements stemming from custodial interrogation of an accused unless it demonstrates that the accused was first apprised of the procedural safeguards embodied in the Miranda decision. "Custodial interrogation" was defined in Miranda as, "Questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom of action in any significant way."
Though parts of the record are vague, it appears that the appellant and Rudolph were taken into custody, placed in the police vehicle, driven back to the location of the abandoned car, and questioned before they were given the required Miranda warning. In addition, there was unrebutted testimony that the two suspects were ordered to fall on the ground on hands and knees at the time police approached them, and Officer Morgan himself testified that he "took them into custody," when he approached them on Peachtree Street.
Miranda, supra, does not prevent traditional investigatory functions such as general on-the-scene questioning, but it does become operative where restraint of an individual by law enforcement personnel is "significant." United States v. Montos, 421 F.2d 215 (5th Cir. 1970) cert. denied 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. The dividing line between general investigation and custodial interrogation is not drawn with precise demarcation, but is determined on a case-by-case factual analysis. Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972). Criteria used to determine the necessity of Miranda safeguards include: probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. Montos, supra. Especially important is whether the focus of the investigation had finally been centered on the accused. Brown, supra; DeGruy v. State, 56 Ala. App. 521, 323 So.2d 406 (1975) cert. denied 295 Ala. 399, 323 So.2d 411. Evaluating the above facts in light of Miranda and Brown, supra, we find that the appellant was in custody when he made his somewhat incriminating statement to the officers. At the time Officer Morgan accosted the appellant and Rudolph on the street, the focus of the investigation was clearly centered on the two men. Furthermore, it must have appeared to the two suspects, from the manner and approach of the police, that they were not free to go at any time. They were "significantly restrained" at the moment the police officers stopped them and took them into custody, whether or not they were immediately placed under formal arrest.
Officer Morgan testified that he asked the two suspects if they knew anything about the abandoned car, and both stated that they knew nothing about it. The following then occurred:
"Q. Did they tell you what their names were?
"MR. THOMPSON: I object to what the defendant said, Your Honor.
"THE COURT: About what his name was or what are you objecting to?
"MR. THOMPSON: Any statement, unless he lays a predicate.
"THE COURT: I understand he asked him what his name was and I overrule you as to that.
* * * * * *
"Q. Okay. Did you ask them what their names were?
"MR. THOMPSON: I continue my objection.
"THE COURT: I overrule you.

*762 "THE WITNESS: I don't believe I asked their name until we got back to the vehicle.
* * * * * *
"Q. Did you find anything in the vehicle?
"A. Yes, Sir. I found two cards, Alabama State Employment Cards that I have here.
"Q. Do they have any name on them?
"A. Yes, Sir. They have the name of Johnny Smith.
"Q. All right. After you found the cards in the car, did you ask anything regarding the names on the cards?
"A. Yes. I pulled the card in my hand and walked up to the car and asked who Johnny Smith was.
"Q. All right. Did anyone reply to that question?
"A. Yes, Sir. Randolph Harrison said he was Johnny Smith.
"MR. THOMPSON: I maintain that general objection.
"MR. SORRELLS: We submit it was an investigation and he was under custodial interrogation.
"THE COURT: Yes. I overrule the objection."
The prosecutor was apparently arguing that the appellant's statement was admissible because, "he was under custodial interrogation." We agree that the appellant was under custodial interrogation, but for that reason the statement was inadmissible rather than admissible. Miranda, supra.
In reviewing the statement made by appellant, it should be emphasized that the giving of a false name to the police at the time of such interrogation is a circumstance which may be looked upon by the jury as indicating a consciousness of guilt, or an attempt to escape detection. Certainly the introduction of such a statement was prejudicial to the appellant. Upon a proper, specific and timely objection, such a statement should not have been admitted into evidence. However, that portion of the record, quoted above, clearly shows that the objection came after the question was answered. The objection was neither timely nor specific.
It has long been held in Alabama that an objection after an answer is given, comes too late. Lewis v. State, 121 Ala. 1, 25 So. 1017 (1899). After a question is asked, and a responsive answer given, an objection comes too late, and the trial court will not be put in error absent a motion to exclude and an adverse ruling thereon. Oatsvall v. State, 57 Ala.App. 240, 327 So.2d 735 (1976); Miller v. State, 52 Ala.App. 525, 294 So.2d 774 (1974); Barnett v. State, 52 Ala.App. 260, 291 So.2d 353 (1974). We find no error on the part of the trial court.
AFFIRMED.
All the Judges concur.

AFTER REMANDMENT
BOOKOUT, Judge.
On application for rehearing in the Supreme Court, Justice Maddox suggests that our finding that appellant was under custodial interrogation may have been based upon a statement to that effect by the prosecutor which may have been incorrectly transcribed by the court reporter. He contends that if the prosecutor actually said that when the questioning took place, appellant was not under custodial interrogation, then we could move to correct the record under Rule 10(f), ARAP, and change our finding.
From a reading of our opinion, it clearly appears that the basis of our finding of custodial interrogation was from the following facts set out in the opinion at length:
(1) ". . . The officers stopped the pair and, `took them into custody,' because Rudolph fit the description which Mr. Faison had given them.. . ."
(2) ". . . Officer Morgan asked the two suspects several questions, then took them back to the abandoned automobile, became increasingly suspicious, then formally arrested the appellant on suspicion of grand larceny."
*763 (3) ". . . [A]ppellant and Rudolph were taken into custody, placed in the police vehicle, driven back to the location of the abandoned car, and questioned before they were given the required Miranda warning.. ."
(4) ". . . In addition, there was unrebutted testimony that the two suspects were ordered to fall on the ground on hands and knees at the time police approached them, and Officer Morgan himself testified that he `took them into custody,' when he approached them on Peachtree Street." (Emphasis supplied.)
We recognized in our opinion that Miranda does not prevent traditional, general onthe-scene questioning until restraint of the individual by police becomes "significant." We cited Brown v. Beto and DeGruy v. State, supra, setting out criteria for making such a determination. We then specifically stated that our finding was based upon the above enumerated facts. It was not until later in our opinion that the prosecutor's statement appeared in a quoted portion of the record. We made a casual reference to his statement, and in no way did we base our finding upon that comment by the prosecutor. Therefore, there is no need to use Rule 10(f), ARAP, to correct a comment of the prosecutor which was not evidence in the case and was not considered in reaching our finding.
REVERSED AND REMANDED ON MANDATE OF THE SUPREME COURT.
All the Judges concur.