Burglary, second degree; sentence: eight years imprisonment.
On Saturday, May 7, 1977, Carrie Jackson was at her home in Prichard, Alabama, gathering clothes together in preparation to take them to a neighbor's house to wash. Appellant, an acquaintance of Mrs. Jackson, arrived at her house in a blue Cadillac automobile with two other men. He asked if he could use her telephone, which she allowed him to do. The two men in the Cadillac drove away during this telephone call. Mrs. Jackson testified she did not hear the substance of the telephone call, but heard enough to know appellant was talking with Carrie Bell Brown.
Mrs. Jackson informed appellant that the two men left him, and appellant said he knew they had. Mrs. Jackson told appellant she was about to go up the street to wash clothes, and appellant said he was leaving also. Both of them exited the house, and Mrs. Jackson locked the door behind them.
When Mrs. Jackson arrived at the neighbor's house, some four houses down the street, she discovered she had left her washing powder at home. As she was returning to her house at approximately 6:30 p.m., she saw appellant running away from her house carrying her television set. She shouted for him to stop but he ignored her. She entered her house and discovered her Panasonic stereo equipment was missing also. She observed that a bedroom window, which had been held shut by a stick propped in it, had been broken. The stick had been removed and the window pushed open. All the doors and windows were locked before the burglary, except for this window, which had been secured by the stick. Mrs. Jackson notified the police who arrested appellant the following Tuesday. *Page 1068 
Janice Chapman, a neighbor, testified she also saw appellant running from Mrs. Jackson's house carrying a television. He ran down a path into a wooded area across the street from where she lived. She also heard Mrs. Jackson shouting at the appellant.
The defense presented two alibi witnesses who placed appellant at another house at the time of the burglary. One of these witnesses was the Carrie Bell Brown that appellant called from Mrs. Jackson's house. On cross-examination, in a very confusing series of answers, she appears to have admitted and then again denied that appellant was at the Jackson house at the time he called her rather than at the alibi location.
 I
The State attempted to introduce several identification cards found on appellant's person at the time of his arrest. All of the cards were issued to names other than that of the appellant. Over objection to their admission as irrevelant, the trial court conditionally admitted the cards subject to the State subsequently proving their relevancy. At trial's end, the court, on its own motion, excluded the documents as irrelevant. Only at that point did appellant move for a mistrial, which the judge denied. Appellant argues that the documents were admitted for the sole purpose of damaging the appellant's character which had not been placed at issue by his taking the stand. Hence, appellant asserts the court erred in failing to grant his motion for a mistrial because of the prejudicial effect of the tardy exclusion of the irrelevant documents.
The trial court has discretion to conditionally admit evidence of a fact on the pledge that additional evidence will be introduced to make the first evidence competent. Gamble,McElroy's Alabama Evidence, (3d ed.), § 13.01; Minto v. State,8 Ala. App. 306, 62 So. 376 (1913). If additional evidence is not introduced to make the first competent, then error resultsunless the trial court excludes that which was conditionally admitted. Tennessee Coal, Iron, and R. Co. v. Kimball, 209 Ala. 466,96 So. 329 (1923).
The cards excluded by the trial court appear to have had no relevance to the issue in this case and were properly excluded. The court committed no error in waiting until the end of the evidence, rather than excluding the evidence at mid-trial before hearing the remainder of the State's case. Appellant neither renewed his objection nor moved to exclude the evidence because its relevancy was never shown. The incompetent evidence was excluded because of the trial court's own prudent and judicial use of discretion. The trial court made it abundantly clear to the jury that such evidence was conditionally admitted subject to the State's burden to subsequently prove its relevancy. Additionally, the judge's thorough remarks excluding the documents covered two pages in the trial record and ended with the court interrogating the jury as to the jurors' ability to disregard that evidence:
 "THE COURT: All right. That is to be disregarded by you. You're not to consider that and I believe we've covered the exhibit. Is there anybody in the Jury Box who thinks you can't follow my instructions tell me now and I'll declare a mistrial. (No Juror answered in the affirmative.) Nobody."
The evidence was properly excluded, and we find no error on the part of the trial court in its ruling in this regard.
 II
Leslie Nobles testified that, as a detective for the City of Prichard, he investigated the instant case. It was through Officer Nobles' testimony that the State was able to have the false identification cards found in appellant's possession conditionally admitted into evidence. During the course of the prosecution's direct examination of Officer Nobles, the following occurred:
 "Q. When the defendant, John Cooke Thomas, was arrested did he volunteer his name?
"A. No, he did not.
 "Q. Did you ask — How many times did you have to ask him who he was? *Page 1069 
 "A. We talked to John for approximately an hour before he gave us his right name.
"Q. Did he give you any other name?
"A. Alvin Harper.
 "Q. Alvin Harper? Is one of these — Does one of these U.S. Social Security cards bare the name Alvin Harper?
"A. Yes, it does.
"Q. Did he give you any other name?
"A. After an hour —
"MR. TAYLOR: Judge, I object.
"THE COURT: Overrule. Go ahead.
"BY MR. DUMONT:
"Q. Did he give you any other name?
"A. William. He gave the name William. (Inaudible)."
From the above portion of the record, it is clear that in the course of custodial interrogation the appellant gave false names to the interrogating officer. The giving of a false name to police officers at the time of interrogation is a circumstance which may be looked upon by the jury as indicating a consciousness of guilt or an attempt to escape detection. The introduction of such a statement therefore would be prejudicial to the appellant. Harrison v. State, Ala.Cr.App., 358 So.2d 759
(1977), reversed and remanded, Ala., 358 So.2d 763 (1978).
The only semblance of a predicate laid by the State for introducing the statement of the appellant or the false identity cards was on direct examination of Officer Nobles:
 "Q. Did you read the defendant his rights as per the Miranda decision?
"A. I did."
In Harrison, supra, this court was faced with almost the identical fact situation as the instant case. There, the police officers, after arresting Harrison, found a state employment card bearing the name of Johnny Smith. One officer asked who Johnny Smith was, and the appellant (Harrison) replied that he was Johnny Smith. Only then did the defense state, "I maintain that general objection." The trial court overruled. This court held that the objection came too late, and no motion to exclude was made, therefore, no error resulted in the trial court's ruling. On certiorari, the Alabama Supreme Court reversed this court stating:
 "The Miranda Rule clearly mandates that the prosecution may not use statements, inculpatory or exculpatory, stemming from a `custodial interrogation' of a defendant unless it proves that the Miranda warnings were given prior to questioning. The burden on the prosecution is heavy, Miranda
holds, to prove that the defendant `knowingly and intelligently waived his privilege against self-incrimination.' Miranda v. Arizona, supra; see also Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Lewis v. State, 295 Ala. 350, 329 So.2d 599 (1976)."
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), the United States Supreme Court stated:
 ". . . unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him [the appellant]." (Emphasis supplied.)
In Swicegood v. State, 50 Ala. App. 105, 277 So.2d 380 (1973), the prosecution attempted to lay a predicate for admission of the defendant's inculpatory statement by asking the following question and receiving an answer as follows:
"`Q. Did you advise him of his rights?
"`A. Yes, sir.'"
This court, in reversing the conviction held:
 "It does not appear in the appeal record before us that the defendant was effectively and fairly informed of his rights under Miranda, nor was he warned of the consequence accruing to him if he confessed or made inculpatory answers. Because of such failure of proof, the burden being on the State of Alabama to adduce the same, none of the confessory answers delineated in the testimony . . . should have been admitted. It was the duty of the State to spell out with clarity and reasonable precision the warnings the officers gave the defendant, if any, as mandated in Miranda. A general question, *Page 1070 
as here, does not meet the requirements of law."
The simple question, "Did you read the defendant his rights as per the Miranda decision," does not indicate whether the rights were read before or after questioning, whether the defendant understood the rights and whether he made an intelligent waiver of those rights. Even in cases where officers have attempted to give a detailed Miranda warning, key elements have been left out or misstated, which required reversal. Square v. State, 283 Ala. 548, 219 So.2d 377 (1968).
For the reasons mandated in the Harrison case by the Alabama Supreme Court and the other authorities hereinabove cited, it is necessary that the case be remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.