BOWEN, Judge.
The sixty-one year old defendant was indicted for the first degree murder of his wife. A jury convicted him of manslaughter in the first degree. Sentence was ten years’ imprisonment.
By statute, this Court is charged with the duty of considering “all questions apparent on the record or reserved in the circuit court.” Alabama Code 1975, Section 12-22-240. This obligation exists even though the defendant has not filed a brief on appeal. Higginbotham v. State, 262 Ala. 236, 78 So.2d 637 (1955).
Hayneville Police Officer Carl Edward Silvers arrested the defendant. Officer Silvers testified that he read the defendant his rights from a card but did not state the specific content of these rights.
Lowndes County Sheriff John Hulett was with Officer Silvers. He also read the defendant his rights from “a waiver of rights form.” Again, there was no testimony as to the content of these rights.
John B. Pemberton, Jr. was the investigator for the Alabama Department of Public Safety investigating the death of Mrs. Brown. He questioned the defendant at the Lowndes County Sheriff’s Office after advising the defendant of his rights. Pem-berton testified that he “went through great pains in explaining his rights to him.”
“(A)nd I even reached the point to where I asked him did he understand his rights and he said yes. I said what are they, and he even went to the point to tell me in the same words that that officer up yonder at Lowndesboro had told him, and at that time I was fairly sure that he understood his rights.”
Investigator Pemberton advised the defendant of his rights in the following language:
“I advised him he had a right to remain silent, that meant he didn’t have to say nothing. I advised him that anything he said may be used against him in a Court of Law. I advised him that he had a right to a lawyer, to have him present during questioning, if he wished. I also advised him that if he couldn’t afford one, that one would be appointed by the Court at a later time, to represent him— not by me and not by the Sheriff, but by the Court. Then, I advised if he decided to talk to me and answer questions about what happened around there in connection with the death of Inez that he had a right to stop at any time he wished — .” (emphasis added)
Before the jury, Investigator Pemberton explained:
“I had a rights form, DPS number 30. I read it to him. I explained that he had a right to remain silent, I told him further that he didn’t have to say anything. I told him that anything that he said can and may be used against him in a Court of Law. I told him that he had a right to a lawyer, to have the lawyer present with him during questioning, if he wished. I told him if he could not afford a lawyer, one would be appointed by the Court at a later time to represent him and that meant that Sheriff Hulett and I wasn’t going to appoint him no attorney. Further told him if he decided to talk to me and answer questions, you know, about the death of his wife Inez around at his house, he had the right to stop at any time he wished.”
The defendant could not read or write but made his mark on DPS Form No. 30, apparently a waiver of rights form. This form was never read into evidence. It was not allowed to be introduced into evidence after Sergeant Pemberton testified that, in his judgment, it was “very doubtful that he (the defendant) knew what it was, or if he understood what was on that paper.”
Questioning of Investigator Pemberton by defense counsel revealed the following:
*139 “Q. Did you have considerable difficulty trying to get through the steps of explaining his rights to him?
“A. My identification and his rights, yes, I did.
“Q. And, he finally agreed that he understood his rights, or he said he understood his rights?
“A. Yes, sir.
“Q. Did you ever tell him that he could have a lawyer right then, before he answered your questions?
“A. Yes, sir, that’s the third point of the rights form that I read, to him.
“Q. Well, I understood you to say, however, that you said he could have a lawyer at a later time, that the Court would appoint him a lawyer at a later time?
“A. No, you misunderstood me or something, I explained to him that he had a right to a lawyer and to have him present with him during questioning, if he wished.
“Q. And, I believe you went further and said that the Court would appoint him a lawyer at a later time, weren’t those your words?
“A. That’s the next explanation. That’s the next step in those rights that I explained to him, he had a right to an attorney, and one would be appointed by the Court at a later time, to represent him. It wouldn’t be appointed by the Sheriff or me.
“Q. So, one was not available right at that time when you were going to ask him questions?
“A. No, no lawyer was available that I knew of.”
The warnings given the defendant run afoul of Square v. State, 283 Ala. 548, 219 So.2d 377 (1968). In Square, the suspect was advised:
“You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. * * * We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to Court.” (emphasis added)
This warning was held insufficient to advise the defendant that a lawyer would be appointed for him prior to any questioning as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966).
In Square, the Court cited Lathers v. United States, 396 F.2d 524 (5th Cir. 1968).
“The Miranda warning must effectively convey to the accused that he is entitled to a government-furnished counsel here and now. If the words are subject to the construction that such counsel will be available only in the future, Miranda has not been obeyed.... ” Lathers, 396 F.2d at 535.
The quotation from Lathers continues: “Although there is no talismanic or heraldic abracadabra which must be fulfilled, the offer of counsel must be clarion and firm, not one of mere impressionism.” 396 F.2d at 535. Here, the defendant was never informed that he had the right to put off answering any questions until the time when he did have an appointed attorney as was the case in United States v. Lacy, 446 F.2d 511 (5th Cir. 1971).
Here, as in United States ex rel. Williams v. Twomey, 467 F.2d 1248 (7th Cir. 1972):
“We hold that the warning given here was not an ‘effective and express explanation’; to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. * * * The entire warning is therefore, at best, misleading and confusing and, at worst, constitutes a subtle temptation to the unsophisticated, indigent accused to forego the right to counsel at this critical moment.” Williams, 467 F.2d at 1250.
The record reveals that the defendant was unsophisticated. Although the record does not show that the defendant is indigent, it must be remembered that the State has the burden of showing an intelligent and voluntary waiver of the Miranda rights before introducing into evidence the product of *140 any custodial interrogation. Lathers, 396 F.2d at 535. Miranda “established the rule that the warnings required and the waiver necessary to accord with its standards were ‘prerequisites to the admissibility of any statement made by a defendant.’ Id. [384 U.S.] at 476, 86 S.Ct. at 1629. ‘(U)nless and until such warnings are demonstrated by the prosecution, no evidence obtained as a result of interrogation can be used against him.’ Id. at 479, 86 S.Ct. at 1630.” United States v. Stewart, 576 F.2d 50, 53 (5th Cir. 1978).
We recognize the split of authority in this area, United States v. Olivares-Vega, 495 F.2d 827, 829 (2nd Cir. 1974); People v. Williams, 131 Ill.App.2d 149, 264 N.E.2d 901 (1970). However, Square defines this State’s position on the issue. It is clear that the accused must be advised that an attorney would be appointed for him prior to questioning if he could not afford one. Moore v. State, 291 Ala. 522, 283 So.2d 187 (1973). See also Sanchez v. Beto, 467 F.2d 513 (5th Cir. 1972); United States v: Garcia, 431 F.2d 134 (9th Cir. 1970).
This Court would have no difficulty in finding that the defendant was fully informed of all of his Miranda rights if the record revealed the content of the other warnings given the defendant (if in fact those warnings were adequate). However, the bare statement of the conclusion that the defendant was advised of his rights, or even of his Miranda rights, from a card or printed form, is insufficient. Thomas v. State, 370 So.2d 1066, 1070 (Ala.Cr.App. 1978), cert. quashed, 370 So.2d 1070 (Ala. 1979). The prosecution must show of what rights the defendant was advised so that the trial judge may make the initial determination of voluntariness.
We cannot hold that the admission of the confession was harmless error because the confession was in direct contradiction of the defendant’s trial testimony.
The judgment of the Circuit Court is reversed and the cause remanded.
REVERSED AND REMANDED.
All Judges concur.