Kenneth Wayne O'Guinn was indicted for the murder of Linda Muller by the Madison County Grand Jury. Subsequently he filed a motion to suppress statements and confessions he had made to an investigator of the Madison County Sheriff's Department. His motion was ultimately granted and the statements and confessions ordered suppressed by the circuit court in Huntsville. Pursuant to Temporary Rule 17, Alabama Rules of Criminal Procedure, permitting appeals by the State of Alabama from adverse pre-trial orders of the circuit court, this case now reaches us.
The evidence tends to show that before each interrogation the appellee was properly given his warnings under Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and informed of his right to have a lawyer and to secure legal *Page 1053 
advice before answering questions. The question presented revolves around what transpired after Deputy Sheriff Duffey administered appellee his rights before the first time he interrogated appellee regarding the Muller murder. Under the United States Constitution, any person has the right to refuse to give evidence against himself. He has the right to the advice of counsel before questioning. If he asks for an attorney, then he is entitled to receive the services of an attorney before being questioned. These rules are so well understood by attorneys that sometimes they are not rehashed in each case. The relevant questions by defense counsel and answers by Deputy Duffey were as follows:
 "Q: Did he not express to you, after you had advised him of his rights, or at the time you advised him, that because it was murder he felt he was going to need a lawyer?
 "A: He could have, I don't remember it, but he could have.
". . . .
 "Q: Is that not what you told Mr. O'Guinn on this occasion that yes, they would give him a lawyer when he got to court?
 "A: I may have told him that if he went to court that the courts would appoint him one."
The relevant testimony of appellee, when questioned by his attorney, was as follows:
 "Q: Now, you understood him when he read the rights, to say that you could have a lawyer appointed if you could not afford one, to be present when you were questioned?
 "A: I understood what he was reading off to me and all but that's the reason I told him I couldn't afford a lawyer and I asked him when I could get one, how I could get one, and he said you will get one when you go to court, so I just had it in my mind that the only way I could get a lawyer was to go to court first.
 "Q: Did you ever in any subsequent times when you were questioned by him, or other investigators, when you were advised of your rights prior to subsequent questioning, did you ask again for an attorney?
 "A: No, sir, because I had the understanding I had to go to court before I could get one."
The trial court, therefore, was faced with the appellee's definite statements that he was told that he could not get an attorney until he went to court and those of Deputy Duffey in which he indicated that he did not remember, but that appellee could have asked for a lawyer and that he may have told appellee that the courts would appoint him a lawyer when he went to court.
From all the evidence, the trial court found that O'Guinn had been questioned in violation of his constitutional rights, and granted the motion to suppress his statements. We are bound by the rule of stare decisis to apply the constitutional law as pronounced by the United States Supreme Court.
In Miranda the court stated that "once warnings have been given, the subsequent procedure is clear." "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." Id.,384 U.S. at 473, 474, 86 S.Ct. at 1627, 1628.
In Square v. State, 283 Ala. 548, 219 So.2d 377 (1968), the Alabama Supreme Court adopted the position of Lathers v. UnitedStates, 396 F.2d 524 (5th Cir. 1968), that a "Miranda warning must effectively convey to the accused that he is entitled to a government-furnished counsel here and now" and that "if the words are subject to the construction that such counsel will be available only in the future, Miranda has not been obeyed. . . ." This position was relied on in part by this court in Brownv. State, 396 So.2d 137 (Ala.Crim.App. 1981), as well. As noted by the state, the "here and now" requirement of Lathers has been explicitly overruled by United States v. Contreras,667 F.2d 976 (11th Cir.), cert. *Page 1054 
denied, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982), on the basis of California v. Prysock, 453 U.S. 355,101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). The court stated that "A Miranda
warning need not explicitly convey to the accused his right to appointed counsel `here and now' and to the extent that Lathers
and other precedents of this court require such explicit warnings, they are overruled." Contreras, at 979. The Alabama Supreme Court in Square and this court in Brown intended only to incorporate the federal court's most recent interpretation of the U.S. Constitution with regard to the information an accused must be given concerning his right to counsel.
Absent the "here and now" emphasis, Square and Brown still correctly define this state's position on what information should be conveyed to the accused regarding the right to counsel under Miranda. The accused must be advised of his right to consult with an attorney, not instantaneously, but certainly before questioning and must be advised that an attorney will be appointed prior to questioning, if he cannot afford one. In no case should the words conveying such rights be subject to the construction that counsel will be available only in the future.
This position is in agreement with the Eleventh Circuit's finding in Contreras. There the court stated that "Prysock
stands for the proposition that a Miranda warning is adequate if it fully informs the accused of his right to consult with an attorney prior to questioning and does not condition the right to appointed counsel or some future event." Contreras, at 979.
The Miranda warnings given the appellee were proper in every respect. However, as the circuit court found, rights of which the suspect was informed were, in the next breath, denied him when he was told he would only have a lawyer "if he went to court." His right to appointed counsel thus was conditioned upon a future event, namely, that he must first go to court. This brought about the same effect as that condemned by the Supreme Court in Prysock as violative of Miranda. O'Guinn was denied the right to counsel. Each subsequent administration of rights to him was tainted by the misinformation he was given when he first requested counsel, because the waiver of counsel after each subsequent administration of rights did not "constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." Edwards v. Arizona,451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Appellee was effectively denied the right to counsel at the first and each subsequent interrogation regarding the Muller murder.
Presented with the definite recollection of appellee regarding the events in question and the indefinite recollection of Deputy Duffey, the trial court had no choice but to conclude that appellee was denied counsel and to grant appellee's motion to suppress his statements and confession. We have no choice but to agree. The decision of the trial court is affirmed.
AFFIRMED.
All the Judges concur.