Larry Wayne Perkins was charged by indictment with receiving stolen property in the first degree, in violation of §13A-8-17, Code of Alabama 1975. The petit jury found the appellant "guilty as charged in the indictment." The trial judge sentenced the appellant to five years' imprisonment, fined him $1,000, and ordered him to pay $1,000 to the Alabama Crime Victims Compensation Fund.
Lieutenant Jeffery Wright with the Gadsden, Alabama, Police Department, during the course of an investigation of a burglary in Gadsden, sent out a teletype to law enforcement agencies throughout the State. The teletype described the stolen property. Lieutenant Wright received word from the Montgomery Police Department that a large amount of silver flatware had been pawned at Colonial Coin Shop in Montgomery, Alabama. The person who pawned the silver was this appellant.
Lieutenant Wright noted that the description of the silver matched a description of the silver taken in a burglary in Gadsden, Alabama. He thus contacted the Isbells, the people from whose home the silver was taken, and instructed them to go to Montgomery and examine the silver. The Isbells complied, and they notified Lieutenant Wright that the silver was, in fact, some of their stolen property.
After receiving this confirmation, Lieutenant Wright contacted the appellant by telephone and told him that he wished to speak with him. The appellant came down to police headquarters, where Lieutenant Wright took a statement from him. Based on this statement, Lieutenant Wright placed the appellant under arrest and charged him with receiving stolen property.
 I
After the appellant arrived at police headquarters, he and Lieutenant Wright talked for approximately two and a half hours to three hours before Lieutenant Wright advised the appellant of his Miranda rights. See Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966). The appellant claims that this period of time before he was advised of his rights amounted to a "custodial interrogation." Thus, he argues that all of the statements that he gave to Lieutenant Wright were elicited in violation of his constitutional *Page 990 
rights and should not have been admitted at trial.
We disagree with the appellant's position. This Court explained "custodial interrogation" as it applied toMiranda v. Arizona in Harris v. State,376 So.2d 773, 774 (Ala.Cr.App.), cert. denied,376 So.2d 778 (Ala. 1979).
 "Miranda is limited to custodial interrogations only. Custodial interrogation is defined as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' Miranda, 86 S.Ct. at 1612. This is what was meant in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), by reference to an investigation which had 'focused' on the accused. Miranda, 86 S.Ct. at 1612, fn. 4.
 "The Miranda warnings are not required simply because the questioned person is one whom the police suspect or one on whom the investigation has focused. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); Malone v. State, 361 So.2d 674 (Ala.Cr.App.), cert. denied, 361 So.2d 691 (Ala. 1978). The '[c]riteria used to determine the necessity of Miranda safeguards include: probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. Especially important is whether the focus of the investigation had finally been centered on the accused.' Harrison v. State, 358 So.2d 759, 761 (Ala.Cr.App. 1977), reversed on other grounds, 358 So.2d 763 (Ala. 1978). While investigative focus is especially significant, it is custody and not focus which marks the point at which the Miranda warnings become mandatory. Mathiason, supra."
See also Finch v. State, 518 So.2d 864, 867-71
(Ala.Cr.App. 1987), cert. denied (Ala. 1988);Johnston v. State, 455 So.2d 152, 155-56
(Ala.Cr.App.), cert. denied (Ala. 1984).
Lieutenant Wright testified that he called the appellant by telephone and asked if he would come to the police station. The appellant agreed. He apparently came in his own transportation and under "his own free will." Lieutenant Wright testified that the purpose of the interview was twofold: (1) He wanted to ascertain the name of the person from whom the appellant bought the silver, so that he could attempt to solve the burglary of the Isbells' home; and (2) he wanted to question the appellant about the operation of his business, Fourth Street Jewelers in Gadsden, Alabama.[1] Lieutenant Wright testified that the appellant was not a suspect at that time.
Lieutenant Wright further stated that the appellant was not under arrest and was free to "leave at any time he wanted to." (R. 24, 39-40.) The appellant testified that Lieutenant Wright never told him that he was under arrest. He stated that he never tried to leave. (R. 64.)
Lieutenant Wright testified that he asked the appellant when he last bought some silver. He stated that the appellant told him it had been six months or so. Lieutenant Wright stated that at this time the appellant became evasive. Since he knew the appellant had not been truthful, he advised the appellant of his Miranda rights. According to Lieutenant Wright, appellant read the waiver of rights form and stated that he understood his rights, but refused to sign the form. A written statement was then taken from the appellant regarding the silver, which the appellant signed.
Based on these facts, we conclude that the appellant was not "in custody" until after he was advised of his Miranda
rights. The investigation had not "focused" on him until that time. See Harris, supra. In fact, as Lieutenant Wright stated, he was trying to learn the name of the seller of the silver in an attempt to solve *Page 991 
the burglary. It was only after the appellant told him that he had not bought any silver in the last six months that Lieutenant Wright began to "suspect" the appellant of wrongdoing.
Admission of the appellant's signed statement into evidence at trial was not error. The statement was given following a proper Miranda predicate, and the appellant voluntarily, intelligently, and knowingly waived his rights.See Bush v. State, 523 So.2d 538 (Ala.Cr.App. 1988).
The appellant is thus not due to prevail on this issue.
 II
The appellant also claims that the trial court erred to reversal by allowing the State to use portions of the appellant's taped conversation to impeach the appellant's testimony. The appellant argues that the better way to impeach a witness is to call the party who was present when the statement was made, because he claims that it is impossible to cross-examine a tape recording.
We disagree. The State recalled Lieutenant Wright as a rebuttal witness. Lieutenant Wright stated that the appellant made statements during trial which were contradictory to those made during his pre-arrest interview. After the proper foundation was laid, portions of the tape were admitted.[2]
Assuming, arguendo, that the tape amounted to a statement taken in violation of Miranda v. Arizona, it may still be used for impeachment purposes. Hill v.State, 555 So.2d 341 (Ala.Cr.App. 1989). Therefore, use of the tape to rebut the appellant's testimony was not error.See United States v. Havens, 446 U.S. 620,100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); Oregon v. Hass,420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Cf. Burks v.State, 489 So.2d 686 (Ala.Cr.App. 1986) (use of a deposit slip on rebuttal properly admissible to impeach accused's testimony at trial).
For the reasons stated, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The City of Gadsden, Alabama, has an ordinance which requires all pawn dealers to record their purchases. He wanted to review the appellant's records to see if he had recorded the purchase.
[2] By request of the appellant, the entire tape was played for the jury. The tape was made a joint exhibit and admitted into evidence, after the appellant's motion to suppress the tape was denied.