The State appeals from the trial court's order granting a motion to suppress evidence filed by the appellee, Randolph Thomas. Thomas was charged in a three-count indictment with murder, a violation *Page 836 
of § 13A-6-2, Ala. Code 1975, and two counts of assault in the first degree, violations of § 13A-6-20, Ala. Code 1975.
The State argues that the trial court erred in granting Thomas's motion to suppress a second statement he gave to Trooper Darrell Campbell because, it argues, Thomas was not in custody while he was in the Huntsville Hospital; therefore, it argues, a Miranda v. Arizona,384 U.S. 436 (1966) warning was not required.
The following evidence was elicited at the hearing on the motion to suppress: At approximately 1:00 p.m. on November 7, 1999, Thomas was involved in a two-vehicle collision at the intersection of Old Railroad Bed Road and Yarborough Road. Trooper Alfred Story, of the Alabama Department of Public Safety, Highway Patrol Division, Madison County, responded and began an investigation of the accident. Volunteers and paramedics at the scene informed him that Thomas appeared to have been drinking. Trooper Story did not speak with Thomas at the accident scene because paramedics were preparing to transport him to Huntsville Hospital.
Because Lori Ann Stephens, a passenger in the other vehicle, died as a result of the accident, Trooper Darrell Campbell, a traffic homicide investigator with the Highway Patrol Division, was called to the scene. Trooper Story left the scene, went to the hospital, and spoke with Thomas. He testified that Thomas was lucid and verbally informed him that he was the driver of one of the vehicles involved in the accident. Thomas informed Trooper Story that he was traveling at approximately 30 miles per hour when he "slid" off the road. Trooper Story testified that he could smell an odor of alcohol on Thomas's breath. He asked him if he had been drinking, and Thomas replied that he had had two beers. Trooper Story testified that he then conferred with Trooper Campbell and Sgt. Bob Phillips, both of whom were present in Thomas's room, informed them that he believed Thomas was under the influence of alcohol, and that they should try to obtain a blood sample. He testified that Thomas was not in custody when he interviewed him because the questions he was asking were merely standard in filling out the accident report. Trooper Story testified that after conferring with the other officers, he arrested Thomas for driving under the influence, issued a Uniform Traffic Ticket and Complaint, informed him that a fatality had resulted from the accident he was involved in, and asked him to take a blood test. Thomas consented to the test and signed the form. Trooper Story testified that he was not involved in any further interviews with Thomas and that Trooper Campbell handled all the paperwork for the blood test. He testified that although Thomas was arrested, he was not taken into custody and was not in custody during his hospital stay. Trooper Story testified that he did not read Thomas his Miranda rights because he arrested him only for driving under the influence.
Trooper Darrell Campbell testified that he arrived at the Huntsville Hospital emergency room, on November 7, 1999, at 4:00 p.m., approximately three hours after the accident had occurred. He testified that he saw Thomas being interviewed by Trooper Story, and that Thomas appeared to be alert. He also testified that based on eyewitnesses, the odor of alcohol on his person, and his interview with the officers, Thomas was placed under arrest for driving under the influence and signed a consent form for a blood sample for testing of his blood-alcohol content. Trooper Campbell further testified that he returned to the hospital the following morning, on November 8, and spoke with Thomas, who was in the intensive care unit. He testified *Page 837 
that he asked the nurse monitoring the intensive care unit if Thomas was under any medication, and she responded that he was not. He testified that he informed Thomas that he was there to follow-up on the accident. The record indicates that Trooper Campbell asked him, "Do you remember what wreck you were in?" Thomas replied, "I was in my friend's pick-up truck." Trooper Campbell testified that Thomas did not respond any further and that he appeared to go to sleep. He testified that he did not give Thomas any Miranda warnings because he was not in custody at the time of the second interview, and he could check himself out of the hospital at any time. He testified that Thomas did, in fact, check himself out two days later, and he was free to do so.
Trooper Campbell testified that on November 12, manslaughter charges were brought against Thomas. Although he attempted to serve Thomas with notice of the charges, he was unable to locate him. Eventually, he discovered that Thomas was in the Limestone County jail on a parole-revocation charge. He testified that he had a third conversation with Thomas on December 1, 1999, at the jail, and that he gave himMiranda warnings because he was in custody at that point. During that conversation, Thomas told Trooper Campbell that he would talk to him, but that all that he had to offer was that he was not driving the vehicle at the time of the accident. Trooper Campbell testified that when he told Thomas that all of the evidence indicated that he was driving the vehicle, he invoked his Miranda rights and requested an attorney. The conversation then ended.
On August 4, 2000, Thomas was indicted by the Madison County grand jury on the homicide and assault charges. On January 5, 2001, he was arrested on the warrant issued pursuant to that indictment.
After his arrest, Thomas, on February 7, 2001, filed a "Motion to Suppress Statements."
Subsequent to the hearing, the trial court granted the appellee's motion to suppress, and made the following findings of fact:
 "This is my ruling. The issues as I see them so far have to do with the alleged statements made by the defendant to various troopers who questioned him after the accident on November 7.
 "The questioning did take place at Huntsville Hospital, initially at the emergency room, and the next day in the intensive care unit. And there was a third statement given at the Limestone County Jail.
 "In reference to the comments made to Trooper Story, this is my thought and my ruling. The initial determination is whether or not this was a custodial interrogation by the trooper; secondly, was the voluntariness of the statement.
 "And as to the consent given as to the blood test and the blood work to be performed, in my opinion, at the time that the defendant was at Huntsville Hospital, Trooper Story was still investigating a traffic accident. And, frankly, simply put, caselaw in this state and most states is that a trooper has the reasonable grounds and reasonable suspicion to go ahead and investigate for possible traffic violations, which is what he stated he had done and, so, therefore, he had the right to ask moderate questions as to whether or not, involving this defendant, there were traffic violations on his part. If so, he can issue a traffic citation.
 "And that's exactly what he did. He asked for comments of the defendant. And, in my opinion, based on what was *Page 838 
presented in Court, the defendant was competent at the time or sufficiently competent so as to answer the questions in a voluntary fashion. Therefore, the comments and statements made to Trooper Story are admissible.
 "Now, as to the comments made to Trooper Campbell — let me go back a moment.
 "Trooper Story arrested the defendant, issued a citation for DUI [driving under the influence]. Trooper Campbell was present at that time and heard that and he knew the arrest had been made and the citation had been issued to the defendant. The next day, in reference to that, he questioned the defendant again.
 "And he has candidly stated that he did not give any Miranda warnings. In my opinion, it was in error. He should have done so. No rights were read to him, even though he knew the defendant had been arrested the night before.
 "The point of some of his questions had to do with whether or not the defendant had been the driver of the vehicle and had been drinking. The focus was on him, as [defense counsel] elicited. And, in fact, Trooper Campbell admitted that the defendant was the prime suspect.
 "As to whether or not this was a custodial interrogation, again, Trooper Campbell candidly admitted in his opinion the defendant was not going anywhere. He was in that hospital bed and not able to go anywhere. Therefore, I believe it was a custodial investigation/interrogation. I do not believe the defendant would have been permitted to leave.
 "He should have had his Miranda rights read to him because the statements he made could have been used against him for the DUI citation. So, in my opinion, the comments made at that time on November 8 at the Huntsville Hospital intensive care unit are not admissible.
 "And as to the third, I don't believe there is any reason to dispute, from what I have heard. Trooper Campbell administered rights to the defendant and whatever statements were made were made.
 "Finally, as to the blood test, I do believe the defendant gave appropriate consent for that and I think the consent was made in a competent fashion; therefore, the blood tests results and blood test consent form are admissible.
"At this time, that's my ruling."
The record indicates that the only testimony received during the suppression hearing was that of Trooper Story and Trooper Campbell. The Alabama Supreme Court in State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996), stated:
 "`Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala. 1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala. 1994).'
 "[Ex parte Agee,] 669 So.2d [102,] 104 [(Ala. 1995)]. `Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's *Page 839 
application of the law to those facts.' Stiles v. Brown, 380 So.2d 792, 794 (Ala. 1980) (citations omitted)."
The trial court's ruling in this case was based upon its interpretation that because "[Thomas] was in that hospital bed and not able to go anywhere," he was, before his second interview, subject to a custodial investigation/interrogation, and, therefore, a Miranda warning was required; the proper interpretation is a question of law. Because Thomas presented no testimony at the suppression hearing and because the testimony of the officers was undisputed, we review de novo the trial court's ruling on the issue. Hill, supra.
This Court is of the opinion that Thomas was not in "custody" during his hospital stay and, therefore, that a Miranda warning was not required. This Court in Nelson v. State, 623 So.2d 432, 434-35
(Ala.Crim.App. 1993), held:
 "Generally, questioning of a patient-suspect in the hospital does not amount to custodial interrogation when the suspect is not under formal arrest. 3 W. Ringel, Searches and Seizures, Arrests and Confessions § 27.-3(a)(3) at 27-16 (2d ed. 1992). `[T]he particular detention or restriction of movement [of a hospital patient-suspect] must rise to the level of a de facto arrest before an individual will be deemed `in custody' for purposes of Miranda.' People v. Ripic, 182 A.D.2d 226, 587 N.Y.S.2d 776, 779
(1992), appeal dismissed, 81 N.Y.2d 776, 594 N.Y.S.2d 712, 610 N.E.2d 385 (1993). `[C]onfinement to a hospital bed is insufficient alone to constitute custody.' People v. Miller, 829 P.2d 443, 445 (Colo.App. 1991). See also United States v. Martin, 781 F.2d 671 (9th Cir. 1985) (accused, who had been making bombs in his apartment, had been injured in explosion, and had gone to hospital, was not `in custody' when officers went to hospital and questioned him); State v. Clappes, 117 Wis.2d 277, 344 N.W.2d 141, 145-46 (1984) (accused, who was questioned by police officers in the hospital following an automobile accident, was not `in custody' because, although he was surrounded by an `atmosphere of restraint,' the restraint was not `created by the [law enforcement] authorities')."
The Miranda warnings are not required simply because the questioned person is a suspect or one on whom the investigation has focused. Oregonv. Mathiason, 429 U.S. 492 (1977). The "[c]riteria used to determine the necessity of Miranda safeguards include: probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. Especially important is whether the focus of the investigation had finally been centered on the accused." Harrison v.State, 358 So.2d 759, 761 (Ala.Crim.App. 1977) (citation omitted). "`While investigative focus is especially significant, it is custody andnot focus which marks the point at which the Miranda warnings become mandatory.'" Perkins v. State, 574 So.2d 988, 990 (Ala.Crim.App. 1990) (quoting Harris v. State, 376 So.2d 773-74 (Ala.Crim.App. 1979)) (emphasis added.)
The test for custody is whether there was a restraint on freedom of movement of the degree associated with a formal arrest. See Campbell v.State, 718 So.2d 123, 135 (Ala.Crim.App. 1997) ("In determining whether a suspect is in custody, a court must examine the totality of the circumstances of the situation using the perspective of a reasonable person in the suspect's position.") Stone v. City of Huntsville,656 So.2d 404, 408 (Ala.Crim.App. 1994) ("`[C]ustody arises only if the restraint on freedom [reaches] the degree associated with [a] formal arrest.'") Here, the undisputed testimony was that the *Page 840 
only restraint on freedom of movement was Thomas's medical condition and treatment. Although Thomas had been issued a citation for DUI before he gave a second statement, no hold was placed on him, and he was later released on his own recognizance. A fatality occurred in this case, but Thomas was not charged with homicide before or during his hospital stay.
Considering all of the circumstances of this case, we are of the opinion that a reasonable person, placed in Thomas's position in the hospital receiving medical treatment, would not have believed that he was under formal arrest for Fifth Amendment purposes when he gave his second statement; therefore, Miranda warnings were not required. As stated earlier, for Miranda to apply there must be both "custody" and "interrogation," and here, clearly, there was no "custody."
The judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Cobb, Baschab, Shaw, and Wise, JJ., concur.