LEIGH M. CLARK, Retired Circuit Judge.
These are consolidated appeals from judgments in cases wherein appellants had appealed from judgments rendered against them separately by the Municipal Court of Montgomery. That court had adjudged Slobodan Nikolic guilty of disorderly conduct, assault, and interfering with an officer and had adjudged Jovan Nikolic guilty of disorderly conduct, interfering with an officer and menacing.
The cases were consolidated in the Montgomery County Circuit Court on motions of said Nikolics and Donald Hughey. Hughey had also been convicted on charges growing out of the same alleged occürrence but was acquitted in the circuit court upon the return of a verdict finding him not guilty.
The trial court submitted to the jury the issue as to each of the appellants’ guilt as to each of the three charges and complaints against him. The jury found each appellant guilty of disorderly conduct but not guilty as to each of the other two charges.
At the conclusion of the evidence presented by the City, the court overruled a motion by each of the appellants herein to exclude the evidence. At the conclusion of all the evidence, charges were requested in writing on behalf of each appellant to the effect that the jury “must acquit” the particular defendant of each of the charges against him.
I.
In their first contention for a reversal, appellants insist that they were not guilty of disorderly conduct. They argue that they, as designated employees of “The Embers Lounge,” where the altercation in question occurred, did, as a matter of law, lawfully use physical force in an attempt to apprehend lawless patrons at “The Embers Lounge” and that they “lawfully conducted themselves to that end in the presence of, patrons, employees and law officers.” They rely largely upon Alabama Criminal Code, § 13A-3-25(a) as follows:
“A person in lawful possession or control of premises, as defined in section 13A-3-20, or a person who is licensed or privileged to be thereon, may use physical force upon another person when and to the extent that he reasonably believes it necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon such premises.”
In charging the jury in the instant case, the court quoted substantially Alabama Criminal Code, § 13A-11-7, which provides:
“(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
“(1) Engages in fighting or in violent tumultuous or threatening behavior; or “(2) Makes unreasonable noise; or
“(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
*999 “(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
“(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
“(6) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.
“(b) Disorderly conduct is a Class C misdemeanor.”
Between midnight and daylight on the night of April 4-5, 1981, a disturbance, including a fight, erupted at The Embers Lounge, a licensed night club at which defendants were employed and on duty and whose duties were, inter alia, to preserve order and protect patrons against abuse. The disturbance became so intense that police officers while on duty were attracted to the scene and converged on it.
We do not discount appellants’ claim that they had the right and the duty to protect customers of the night club and to use reasonable force or show of force, if necessary, in order to do so. The jury was evidently impressed with this contention by their finding that neither was guilty of an assault as charged. However, in order to be guilty of disorderly conduct, it is not necessary that one be guilty of an assault or the like, as disclosed by some of the methods by which disorderly conduct is committed as stated in the statutory definition thereof quoted above. Officer T.C. Newman of the Montgomery Police Department testified:
“I was on routine patrol that morning and I was driving off Turner Place, and I was a passenger and my partner was driving. And I observed Jovan Nikolic chasing James Nix down the Atlanta Highway. Up behind him at The Embers were several more people standing outside. And I told my partner to intervene on this, because it looked like it was a fight. And I called for a backup unit. And we went over to the Big Ten Tires, and I jumped out of the car and told James he better come here, and I stopped the altercation. I told Jovan to go back up to the Club, and we would handle the situation. And I do not know what had happened inside the Club. And Jovan went back up to the Club. We had a discussion there, some words, but nothing serious and I started to escort Mr. Nix back up to the Club. And on the way, I also met up with Paul Henderson and he also walked with me. And my partner drove our vehicle back up to the parking lot of Nik’s[1] Embers.
“We got up to the wall there, and Mr. Nix went on over to his van, and so did Paul Henderson, and they got in it.
“Q. Paul Henderson is the gentleman that just testified earlier; is that right?
“A. Yes, sir.
“Q. All right. Go ahead.
“A. And at this time, another unit came up to the scene. There were four officers there then. Jovan, Bo Bo [a nickname for Slobodan], and Hughey and several other people came out of the Club on the — at the east end of the building, and we got into a little discussion there. We were hollering back and forth to each other. Jovan told us we had better get these people off their premises right now. Bo Bo said, ‘You had better get them out of here, or somebody is going to get hurt.’ And Jovan said, ‘You damn police ain’t doing no damn good.’ And I told them again to go back inside, as did Officer Higgins.
“At this time, Donald Hughey went over to the — ran over to the driver’s door of the van, and attempted to grab the driver out, James Nix. Officer Higgins, Officer Childrey, Officer Demus, went over and took custody of Mr. Hughey. I do not *1000 think they arrested him at this time, but they got him off of Nix. And I believe Jovan and Bo Bo at this time went over to the other side and — ran over to the other side of the van and grabbed Paul Henderson and jerked him out. And I did not personally see any blows. I just know that they did grab him, grabbed him out of the van, out of the sliding door.
“At this time, Mr. Nix, the driver of the van, evidently panicked, and he backed up and then went forward toward the Atlanta Highway on the — the east end of the lot, and he struck Jovan and Bo Bo and another person, Danian something- or-other, I can’t pronounce his last name, and all three of them went to the ground. And at this point, I grabbed a police car that was struck by the van — it was not disabled — I got in it, and I went in pursuit of the vehicle, because it had completely left the scene. And I pulled him over approximately two and a half blocks away at the Southern Pantry, on the Atlanta Highway. I took the driver into custody at that time for hit and run, and that is about the end of my testimony.
“Q. Officer, during the time after you got to Nik’s Embers, and prior to the time these Defendants pulled out Paul Henderson from the van, did you see him do anything to provoke them in any way?
“A. No, sir.
“Q. Were there any words exchanged prior to that, that you recall, between them?
“A. The only fighting words came from Jovan.
“Q. Can you tell me anything about how Mr. Bo Bo Nikolic was acting in regards to your activities that day?
“A. Well, he was extremely upset, and he was hollering, yes, sir.
“Q. Can you tell the Ladies and Gentlemen whether or not he used any profanity in your presence?
“A. I believe so, sir. I think he said ‘You better get them out of here.’ ”
It is not our responsibility to determine whether the jury should have rendered a guilty verdict on the disorderly conduct charge as some of the evidence points in one direction and some in the other. In quoting from some of the evidence for the City, we do not ignore the evidence for the defendants, which as a whole is more favorable to them than the evidence for the City. Nevertheless, the trial court was justified in denying defendants’ motion to exclude the evidence and their request for the general affirmative charge in their favor, if there was substantial evidence that they were guilty of disorderly conduct, as specifically alleged in the respective complaints against them. This is true even though their disorderly conduct occurred while they were otherwise lawfully attempting to apprehend “lawless patrons at the Embers Lounge,” as they contend. We conclude that appellants’ first contention for a reversal is not well taken.
II.
Appellants’ second issue is thus stated in their brief:
“Acquittal of one charge was acquittal of all charges since the City failed to elect which Count was to be submitted to the jury. Sly v. State, 387 So.2d 917, 1980; Murry v. State, 48 Ala.App. 89, 261 So.2d 922, 1972; Baldwin v. The State, 47 Ala. App. 136, 251 So.2d 633, 1971.”
The cases cited and relied upon by appellants stand for the proposition that a single offense cannot be so split up or divided into two or more offenses as to bring about non-concurrent sentences. We are not faced with such a situation here, as neither defendant was convicted under any complaint other than the one charging disorderly conduct. There is nothing in any of the cases cited by appellant that required an election by the City as to which count was to be submitted to the jury. We disagree with appellants’ contention that the acquittal of the other charges constituted an “acquittal of all charges.”
*1001 III.
The third issue presented by appellant is as to whether the trial court committed reversible error in its ruling during the cross-examination of Paul Henderson, a witness for the City, as follows:
“Q. Now, have you ever been convicted of anything besides minor traffic offense?
“A. Yes, sir.
“MR. HAMPTON [Attorney for the City]: Object to that.
“THE COURT: I sustain it.
“MR. LOWREY [Attorney for defendants]: All right.
“THE COURT: I will let you ask him
“MR. LOWREY: Sir?
“THE COURT: If you are going to moral turpitude.
“MR. LOWREY: Yes, sir, I am.
“Q. What were you ...
“THE COURT: Wait just a minute.
“Q. You say you have been convicted of something besides minor traffic offense?
“MR. HAMPTON: We objected to that, and that was sustained.
“THE COURT: I will let you ask him if he has been convicted of an offense, if that offense involves moral turpitude.
“Q. Have you ever been convicted of an offense that involved moral character, or moral turpitude?
“A. I really do not understand the word.
“THE COURT: You have to ask him the offense.
“Q. What was the offense that you were charged?
“MR. HAMPTON: Object.
“THE COURT: I sustain it.
“MR. LOWREY: All right. Your witness.”
The only Alabama case cited by appellants in support of Issue III is Fondren v. State, 204 Ala. 451, 86 So. 71 (1920), which, we believe, has been overruled in its holding in effect that the conviction of any felony is the conviction of a crime involving moral turpitude that can be shown in impeachment of a witness, as explained in Gamble, McElroy’s Alabama Evidence, § 145.01(8) (1977):
“... It appears quite clear at this point that these decisions overrule earlier authority in Alabama to the effect that the question of whether the witness served in a penitentiary does involve moral turpitude and should be allowed.5 [Footnote 5 cites Fondren v. State, 204 Ala. 451, 86 So. 71 (1920); Dickey v. State, 32 Ala.App. 413, 26 So.2d 532 (1946) and Moore v. State, 12 Ala.App. 243, 67 So. 789 (1915)].”
The court was not in error in its sustention of the City’s objection to defendants’ questions as to previous convictions of the witness.
IV.
During the direct examination of the witness Reba Carolyn Stewart, the following occurred:
“Q. Did Jovan Nikolic resist or attempt to do harm or violence to these police officers?
“A. No, sir.
“Q. At that time, did he appear to be submissive to their authority?
“MR. HAMPTON: Objection.
“THE COURT: I sustain it. Let her testify this morning, and let her testify and the jury can draw their own conclusion.
“MR. LOWREY: Take your chair back. (At this time the Witness returned to the Witness Stand).”
Appellants argue that the testimony elicited by the question to which the City’s objection was sustained constituted “a summary or shorthand rendition of that which he [the witness] observed in the conduct of a [another] witness.” Appellee sees more involved than a shorthand rendition of facts and says the question ran afoul of the principle that a witness cannot testify as to the uncommunicated intent or mental operation of another. The case of Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974), citing Judge McElroy extensively, discontinued the rule that the witness could not testify on direct *1002 examination as to his uncommunicated mental operation, but it did not hold that he could do so as to the uncommunicated mental operation of another. Whether Starr v. Starr leads to such a result has given rise to some question, which is fully considered in Gamble, McElroy’s Alabama Evidence, § 102.07(4), which concludes with the following sentence:
“However, the case [Roynica v. State, 54 Ala.App. 436, 309 So.2d 475 (1974)] does leave unclear whether the decision of Starr v. Starr affects the rule that a witness cannot testify to the intent of someone other than himself.”
Any indication that adherence to Starr v. Starr permits the admission in evidence of the uncommunicated mental operation of another, as found in XV of the opinion in Roynica should be corrected, and the correct rule to the effect that it is not admissible, as stated in Armstead v. State, 57 Ala.App. 459, 329 So.2d 150 (1976), should be followed.
As earnest counsel for appellants and earnest counsel for appellee are in disagreement as to whether the question asked the witness as to whether Jovan Nikolic appeared “to be submissive to” the “authority” of the officers would have constituted a shorthand rendition of facts, or, on the other hand, the mental operation of a person other than the witness, emphasis is placed on the importance of our not infringing upon the discretion vested in the trial court. As Judge McElroy demonstrates and states in Gamble, McElroy's Alabama Evidence, § 127.01(4), in instances such as the one involved here, an appellate court should “reverse the decision of the trial court only for an abuse of discretion that prejudices the party against whom the ruling is made.” We conclude that there was not an abuse of discretion that prejudiced either appellant in the sustention of the City’s objection to the question asked defendants’ witness as to whether Jovan Nikolic appeared “to be submissive” to the authority of the officers.
We find no prejudicial error in any of the issues presented by appellants. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.

. It appears that the word “Nik’s” is used as an abbreviation for the possessive of the name “Nikolic.” Mr. and Mrs. Nikolic, the father and mother of the appellants, owned and operated The Embers Lounge. Whether either of the appellants owned any legal interest in the establishment is not clear from the evidence, but it is reasonably clear therefrom that they had more of an interest in the place than they would have had if there were no family relationship between them and the owners and operators.