The appellant, Michael Brandon, was convicted of child abuse, a violation of § 26-15-3, Code of Alabama 1975. The trial court sentenced the appellant to four years in the State penitentiary and subsequently ordered him to serve eight months, with the remainder of the sentence suspended upon five years' probation.
The evidence tended to show that Michael Brandon used a handheld dryer to inflict second and third degree burns on his three-month old daughter, Jessica Brandon. The State's witness, Dr. Charles Hunter, a Mobile pediatrician, treated the infant for burns which covered roughly six percent of her body. Dr. Hunter stated that because the burns exhibited a symmetrical pattern, he did not believe the injuries were self-inflicted. He was of the opinion that if the burns were self-inflicted the infant would have pulled to one side or the other, negating any possibility of a symmetrical pattern. Dr. Hunter further noted that the infant received "full thickness" burns, caused by exposure to intense heat over an extended period of time.
Robin Ryals Brandon, former wife of the appellant and natural mother of the infant, testified that when she left for work on the day of the injury, the baby was asleep and "doing fine." She further testified that shortly after arriving at her work place, the appellant phoned, frantically asking her *Page 1318 
to hurry home. Robin said she went immediately home, where, she said, she found her baby lying on the living room floor, with ice on her face and chest, and the appellant standing beside the baby. Robin said she saw that the skin on her baby's cheeks was peeling. Robin and the appellant took the baby to a local hospital, where the baby remained for two weeks.
The appellant testified that he had bathed Jessica and was drying her hair when he saw an automobile pull into a neighbor's yard. He said that men got out of the car and approached his trailer. Remembering that the back door was unlocked, appellant said, he placed the infant in an unsecured baby carrier in the bathroom and laid the blow dryer on the bathroom counter and ran to lock the back door. Appellant said he watched the men for two and one-half minutes and then when he returned to the infant, he found the hair dryer wedged in between the baby's legs, blowing hot air into her face. The appellant said he could not recall whether the hair dryer was turned off when he placed it on the counter.
The appellant raises two issues on appeal.
 I
The first issue involves the sufficiency of the circumstantial evidence. Specifically, appellant argues that Dr. Hunter's incriminating testimony does not suffice to prove that the injuries resulted from an intentional act or that the injuries resulted from abuse.
Appellant asserts that "willful," as defined in Code ofAlabama 1975, § 26-15-3, requires some showing of culpable intent.
The offense of child abuse is defined in § 26-15-3, Code ofAlabama 1975, as follows:
 "A responsible person, as defined in § 26-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
Appellant cites Phelps v. State, 439 So.2d 727, 733
(Ala.Cr.App. 1983), for the proposition that "willfull" has been defined to require an act proceeding from a conscious motion of the will. Appellant asserts that "willfulness" requires a showing of something other than an accident. The definition of "willful" contained in the Phelps opinion was taken fromBlack's Law Dictionary. The following definition of "willful" is found in Black's Law Dictionary 1434 (5th ed. 1979) (emphasis added):
 "Proceeding from a conscious motion of the will; voluntary. Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.
". . . .
 "The word [willfully] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. . . ."
Reading Black's definition, together with Dr. Hunter's testimony that the infant's injuries were "not accidental," one could conclude that the injuries were willfully inflicted.
It is readily apparent that the appellant's conviction was based on circumstantial evidence. This court has held in many cases, among them Gullatt v. State, 409 So.2d 466
(Ala.Cr.App. 1981), that circumstantial evidence will support a conviction as strongly as direct evidence, provided it points to the guilt of the accused.
Where facts are presented from which the jury may reasonably infer that the alleged crime has been committed, the question must be submitted to the jury. Suggs v. State, 403 So.2d 309,313 (Ala.Cr.App.), cert. denied, 403 So.2d 313 (Ala. 1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648
(1982). The jury is then under a duty to draw permissible inferences from the circumstantial evidence presented and to base its verdict accordingly. Gullatt, supra. See also Dolvinv. State, 391 So.2d 133 (Ala. 1980); Hayes v. State,395 So.2d 127 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981). In Giles v. State, 440 So.2d 1237, 1239
(Ala.Cr.App. 1983), *Page 1319 
overruled on other grounds, Matkins v. State, 497 So.2d 201,203 (Ala. 1986), this court held:
 "Where there is evidence from which the jury may by fair inference find the defendant guilty, the trial court should submit the case to the jury to determine the weight it will give the evidence, and this Court should not disturb the verdict."
In cases challenging the sufficiency of the evidence, this court is required to view the evidence in the light most favorable to the State, Williams v. State, 530 So.2d 881, 886
(Ala.Cr.App. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1159,103 L.Ed.2d 218 (1989); Logue v. State, 529 So.2d 1064
(Ala.Cr.App. 1988), and it will not substitute its judgment for that of the jury. Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Mitchell v. State, 530 So.2d 908, 910
(Ala.Cr.App. 1988). See also Cumbo, supra, United States v.Black, 497 F.2d 1039 (5th Cir. 1974); United States v.McGlamory, 441 F.2d 130 (5th Cir. 1971).
The State presented sufficient evidence from which the jury could conclude that the appellant was guilty of child abuse. Therefore, the trial court correctly denied appellant's motion to exclude the State's evidence and his motion for judgment of acquittal.
 II
Appellant also contends that the trial court abused its discretion by interfering with the prosecution's examination of its expert witness. Specifically, he argues that the trial court erred when it instructed the prosecution on how to lay a proper predicate for the receipt of the expert's testimony. The following excerpt from the record contains the exchange that took place during the State's direct examination of Dr. Charles Hunter, by which appellant claims the trial court aided the prosecution.
 "Q Doctor, do you have an opinion as to what caused these burns on her face?
 "MR. PENNINGTON: Object to it, Your Honor. No proper predicate.
 "THE COURT: Sustained. I have to insure that substantial justice is done. Dr. Hunter, have you reviewed the hospital records in this case?
"THE WITNESS: Yes, sir; I have.
 "THE COURT: Hand them to Dr. Hunter, would you, somebody.
"MR. JORDAN: He has got them up there.
 "THE COURT: Have you reviewed all of those records. Would you look at them, please.
"THE WITNESS: Yes, sir.
 "THE COURT: Buzz, you are going to have to ask him about his review of the hospital records, what other inquires he made, what other things he observed. Ask him whether on the basis of that opinion he is able to form — of that review he is able to form an opinion. I am not going to keep Dr. Hunter here for an hour while we cast about.
"MR. JORDAN: Yes, Your Honor.
 "MR. PENNINGTON: Your Honor, I want to note my objection for the record of the court's informing the District Attorney as to how to properly qualify a witness to testify.
 "THE COURT: Overruled, but the objection is noted."
A review of the record indicates that the trial court's comments were made in an attempt to encourage the State to lay the proper predicate. This does not, however, constitute reversible error. Burkett v. State, 439 So.2d 737
(Ala.Cr.App. 1983). No abuse of discretion by the trial court is shown in the record. The trial judge was performing his duty when he indicated to the prosecution that a proper predicate would have to be laid before the doctor's testimony could be admitted. The trial judge is vested with discretion in the conduct of a trial and this court will not interfere *Page 1320 
in the absence of abuse. Tombrello v. State, 421 So.2d 1319
(Ala.Cr.App. 1982); Shelton v. State, 384 So.2d 869
(Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala. 1980). A judge may suggest the correct way to introduce admissible evidence.Duncan v. State, 455 So.2d 291, 292 (Ala.Cr.App. 1984). See alsoBurks v. State, 353 So.2d 539, 541 (Ala.Cr.App. 1977).
The trial judge prefaced his questions of the witness and his comments to the prosecution with the remark that "I have to insure that substantial justice is done." A reading of the record suggests that the trial judge's instruction was a mere attempt at moving the trial expeditiously forward. No error was committed.
For the foregoing reasons, appellant's conviction is hereby affirmed.
AFFIRMED.
All Judges concur.
 *Page 1