The appellant, Marlan A. Smith, was convicted of disorderly conduct, a violation of § 13A-11-7(c), Code of Alabama 1975. He was sentenced to 90 days in the city jail.
The appellant argues that evidence presented by the State was not sufficient to support his conviction for disorderly conduct. Specifically, the appellant argues that his allegedly obscene or abusive language did not rise to the level of "fighting words," i.e., that they would have had a likelihood of causing a violent response by the police officer to whom they were addressed. See Robinson v. State, 615 So.2d 112
(Ala.Cr.App. 1992).
The record indicates that a police officer for the City of Anniston was dispatched to a private home in a residential neighborhood, on a complaint of some loud music. When the officer arrived at the scene, he rolled his vehicle's window down and was approached by one of approximately 10 to 12 individuals who were standing on or around the private home. The officer testified that he did not hear any loud music and that the individual to whom he spoke was very cooperative. However, he testified that several other individuals, including the appellant, were close to his vehicle. He testified that the appellant leaned forward to his car window, and as the officer began to leave, yelled in a loud voice, "Suck my dick." The officer testified that he then parked his car and told the appellant that he was under arrest. The appellant walked through a gate in a fence and toward the front porch of the private home. The officer testified that "[s]everal other subjects became disorderly. We had quite a scene there for a few minutes." He testified that as he attempted to follow and apprehend the appellant, the appellant became louder and angrier. The officer testified that the appellant was demanding to know why he was being placed under arrest and that he said, "Well, I'm on private fucking property and you can't arrest me." The officer testified that the appellant's voice was loud enough to be heard in the street and by most of the *Page 97 
people standing close to the scene. He stated that the other individuals had not been disorderly before the appellant "started his little show." The officer testified that certain other individuals were also arrested at that time for yelling various obscenities at him and for telling him that he was on private property and had no right either to be there or to arrest anyone. Following the police officer's testimony, defense counsel made a motion for a judgment of acquittal, stating that it was not sufficient to support a conviction that the State show that the appellant directed profanities toward the police officer, but the State should have shown that doing so was recklessly intended to cause public inconvenience. Defense counsel further argued, "Nothing would have happened if the officer had gone on. Stopping and arresting him is what precipitated anything that happened there. Not [the appellant's] conduct whatsoever." Defense counsel citedRobinson v. State, supra, as authority. The prosecutor responded that Robinson v. State involved a charge of harassment, which called for a higher standard of proof and further stated that he did not agree with the holding inRobinson.
In L.M.A.W. v. State, 611 So.2d 497 (Ala.Cr.App. 1992), this court applied Robinson v. State, supra, to a case involving a charge of public disorderly conduct. In that case, a student and her parents met with the principal of the student's high school and were told by the principal that she was expelled. As she walked down the hall after leaving the principal's office, the defendant looked at the chief of police, who was approximately 20 feet behind her, jerked open a door and said, "I don't need this fuckin' school anyway," and violently slammed the door. The chief of police was the only person who heard the student's remark. In L.M.A.W. v. State, this court stated:
 " 'A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
" '. . . .
 " '(3) In a public place uses abusive or obscene language or makes an obscene gesture.'
 "Ala. Code 1975, § 13A-11-7(a)(3) (emphasis added [in L.M.A.W.]). The 'abusive or obscene language' provision of the disorderly conduct statute 'is very narrow and applies only to "fighting words." ' Mosley v. City of Auburn, 428 So.2d 165, 166
(Ala.Cr.App. 1992), superseded by court rule on other grounds, as noted in Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Cr.App. 1987).
 " 'This Court has defined "fighting words," in light of the United States Supreme Court decisions in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), as follows:
 " ' "[T]hey are those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace."
 " 'Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Cr.App.), remanded, 342 So.2d 937 (Ala. 1976).
" '. . . .
 " 'As we observed in Skelton, construing a similar Code provision:
 " ' "[T]he statute requires that the words be calculated to cause an immediate breach of the peace. It is not enough . . . they merely arouse anger and resentment."
 " '342 So.2d at 937 (emphasis added [in L.M.A.W.]).'
 "Swann v. City of Huntsville, 455 So.2d 944, 950
(Ala.Cr.App. 1984). Cf. Robinson v. State, [615 So.2d 112] (Ala.Cr.App. 1992) (not harassment to say 'Fuck Officer So-and-so'); Shinault v. City of Huntsville, 579 So.2d 696, 699-700
(Ala.Cr.App. 1991) (accused who called arresting officer a 'son of a bitch' not guilty of harassment) (Bowen, J., concurring). *Page 98 
 " 'In Swann, we observed that the accused's use of profanity to the arresting officer "may have aroused the anger and resentment" of the officer, but it was not "calculated to provoke physical retaliation, especially in view of the probable training received by the officer in dealing with similar situations." ' Id. at 700."
611 So.2d at 498.
Unlike the fact situation in L.M.A.W. v. State, supra, in the present case other individuals heard the abusive language in addition to the police officer. The commentary to § 13A-11-7,Code of Alabama, 1975, makes it clear that this statute is designed "to protect the public from being annoyed, inconvenienced or alarmed." This section "encompasses the common law offenses of breach of the peace and disturbing the peace." Id. While it is clear that the statute requires that the offender intend to cause public inconvenience, annoyance, or alarm, or that the offender recklessly creates a risk thereof, such questions of intent are generally matters for the finders of fact. In the present case, because the appellant made the offensive comment, not only to the police officer, but also in the presence of other individuals who could hear and react, whether his conduct amounted to disorderly conduct was a question of fact for the jury. Where facts are presented from which the jury could reasonably infer that the alleged crime has been committed, the question must be submitted to the jury. See generally, Brandon v. State, 542 So.2d 1316
(Ala.Cr.App. 1989). "The jury is then under a duty to draw permissible inferences from the circumstantial evidence presented and base its verdict accordingly." Id at 1318.
In the present case, the State provided sufficient evidence to warrant the case being submitted to the jury.
AFFIRMED.
All judges concur.