The appellant, Felicia D. Hutchins, was convicted of disorderly conduct, a violation of § 13A-11-7, Ala. Code 1975, and resisting arrest, a violation of § 13A-10-41, Ala. Code 1975. For each conviction, she was sentenced to six months' imprisonment, and the sentences were to run concurrently. The balance of the sentences was suspended and she was placed on two years' probation.
 I.
Hutchins contends that the City failed to establish a prima facie case of disorderly conduct. Specifically, she argues that she did not intend to cause "public inconvenience, annoyance, or alarm," and that she did not use obscene language.
The complaint filed by Alexander City police officer Fred Roth on July 11, 1996, charged the following:
 "Felicia Hutchins, Defendant, whose name is otherwise unknown to the complainant did, prior to the commencement of this action, commit the offense of disorderly conduct within the County of Tallapoosa and the City of Alexander City or in the police jurisdiction thereof, in that she . . . came into the police department cursing and screaming about wanting to see the officers that arrested her family. She was told to stop cursing and did not stop. She also slapped my hand and pushed me . . . in violation of Ordinance Number 806, which embraces Section 13A-11-7, Ala. Code 1977, previously adopted, effective *Page 461 
and in force at the time the offense was committed."
(C. 5.)
Section 13A-11-7, Ala. Code 1975, states, in pertinent part:
 "(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
 "(1) Engages in fighting or in violent tumultuous or threatening behavior; or
"(2) Makes unreasonable noise; or
 "(3) In a public place uses abusive or obscene language or makes an obscene gesture . . . ."
In Smith v. City of Anniston, 668 So.2d 96 (Ala.Cr.App. 1995), this Court addressed a similar issue. In Smith, we stated:
 "While it is clear that [§ 13A-11-7] requires that the offender intend to cause public inconvenience, annoyance, or alarm, or that the offender recklessly creates a risk thereof, such questions of intent are generally matters for the finders of fact. In the present case, because the appellant made the offensive comment, not only to the police officer, but also in the presence of other individuals who could hear and react, whether his conduct amounted to disorderly conduct was a question for the jury. Where facts are presented from which the jury could reasonably infer that the alleged crime has been committed, the question must be submitted to the jury. See generally, Brandon v. State, 542 So.2d 1316
(Ala.Cr.App. 1989). `The jury is then under a duty to draw permissible inferences from the circumstantial evidence presented and base its verdict accordingly.' Id. at 1318.
 "In the present case, the State provided sufficient evidence to warrant the case being submitted to the jury."
668 So.2d at 98. See also Ivey v. State, 710 So.2d 946, 947 (Ala.Cr.App. 1998) (testimony that guests of a birthday party overheard the defendant yell abusive language to neighbor established a prima facie case of disorderly conduct); Graham v. City of Mobile, 686 So.2d 541, 544
(Ala.Cr.App. 1996) (where testimony that the defendant became uncooperative, shouted racial epithets to a crowd, and instigated a fistfight with a police officer, a prima facie case of disorderly conduct was established).
The State's evidence established the following. Alexander City police officer Marcus Billups testified that, while he was standing in the doorway to the locker room at the police station on the afternoon of July 10, 1996, he heard a woman yelling in the front hallway of the police station. Billups stated that the woman screamed, "I want to see all their asses out here right now." (R. 33.) According to Billups, he walked to the front of the station, and Hutchins and two of her friends were standing in the hallway. Billups testified that the front of the police station is a public area. Billups testified that Hutchins told him that she believed that a police officer had pushed her child off her parent's porch.[1] Billups stated that Hutchins was irate and upset, and that she was using vulgar language. Alexander City police officer Fred Roth testified that Alexander City police officer Jay Turner told Hutchins that her language was unacceptable, and that, if she did not calm down, she would be arrested. Roth stated that Hutchins pointed her finger in Turner's *Page 462 
face and screamed, "Don't you fucking tell me what to do." (R. 60.) According to Roth, Hutchins's scream could be heard throughout the police station. Roth testified that he pointed his finger at Hutchins and told her that if she continued behaving inappropriately, he would arrest her for disorderly conduct. Roth stated that Hutchins yelled, "Shut up," and slapped his hand. (R. 60.) Roth further stated that he grabbed Hutchins's arm and told her that she was under arrest.
Additionally, Roth testified that Hutchins jerked away from him. Roth stated that Alexander City police officer Jason Jackson tried to help Roth, and he grabbed Hutchins's arm. According to Roth, Hutchins kicked Jackson near his groin. Roth testified that he wrestled with Hutchins, that she was uncontrollable, and that he forced her against a wall and handcuffed her. Roth stated that Hutchins sat on the floor and that he had to pick her up and carry her to a jail cell. Roth further stated that, once she was placed in a cell, Hutchins kicked the cell door and cursed loudly for approximately one hour.
The appellant testified that she did not yell or use vulgar language, that the police officers never told her that she was under arrest, and that she did not resist arrest. Additionally, Tonya Brown, Christy Gaddis, and Eric Hutchins testified that they were at the police station with Hutchins, and that she did not use vulgar language or act inappropriately.
Viewing the evidence in the light most favorable to the State, as we are required to do, see Bayhi v. State, 629 So.2d 782, 788 (Ala.Cr.App. 1993), we determine that the State established a prima facie case of disorderly conduct. Given that Roth testified that Hutchins's screaming could be heard throughout the police station, that she yelled in front of police officers and members of the public in a public area of the police station, and that she slapped his hand away, the State's evidence established that Hutchins intended to cause public inconvenience, annoyance, or alarm, or that she recklessly created a risk thereof, by making unreasonable noise and by using abusive language in a public place. Thus, the trial court did not err in denying Hutchins's motion for a judgment of acquittal.
 II.
Hutchins contends that § 13A-11-7, Ala. Code 1975, is unconstitutional because, she says, it violates her First Amendment right to free speech as guaranteed by the United States Constitution. As best we are able to determine, it appears that Hutchins argues that her statements to the police officers were not "fighting words" and that they did not contain obscene or abusive language. (Appellant's brief at 7.)
Our review of the record indicates that this issue is raised for the first time on appeal. "Even constitutional issues must first be raised to the trial court or they are waived." Stanley v. State, 723 So.2d 821,822 (Ala.Cr.App. 1998). See also Harris v. State, 705 So.2d 542
(Ala.Cr.App. 1997); Adams v. City of Pelham, 651 So.2d 55 (Ala.Cr.App. 1994). Thus, this issue is not preserved for review.
Moreover, Hutchins's right to free speech was not violated.
This Court addressed the application of § 13A-11-7 to theFirst Amendment right to free speech in Sterling v. State, 701 So.2d 71
(Ala.Cr.App. 1997), wherein we stated:
 "Last, Sterling argues that § 13A-11-7(a)(2), as applied in this case, is unconstitutional because, he says, it deprived him of his First Amendment rights to free speech as guaranteed by the United *Page 463 
 States Constitution. The record does not support this argument. There is ample evidence that Sterling's voice was very loud in the hallway of the courthouse. His loud voice caused employees in other offices along the hallway to stop their work. . . . Under these particular facts, we have no trouble concluding that Sterling made `unreasonable noise' in the hallway of the courthouse, for which he was ultimately arrested. Such a restriction on `unreasonable noise' was a proper time, place and manner regulation of speech. See [People v.] Bakolas, 462 N.Y.S.2d [844,] 847, 449 N.E.2d [738,] 741 [(N.Y. 1983)].
 "Sterling cites a number of cases that, he says, stand for the proposition that provocative speech directed at police officers is protected by the First Amendment. See, e.g., Hancock v. Hobbs, 967 F.2d 462
(11th Cir. 1992); City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); Norwell v. City of Cincinnati, 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973). However, each of these cases is factually distinguishable from the case before us. All of these cases involved the question whether the defendant had been arrested because of what he or she said to a police officer. In the present case, the evidence did not indicate, in any way, that Sterling was arrested because of what he said to the sheriff. Instead, it is clear that he was arrested because his conduct `inconvenienced, annoyed or alarmed' other people present in the courthouse. Sterling has not `demonstrated that [§ 13A-11-7(a)(2), Code of Alabama 1975] is vague as applied to his own conduct' as required by Culbreath v. State and the cases cited therein. 667 So.2d [156,] 158 [(Ala.Cr.App. 1995)]."
701 So.2d at 74-75.
In this case, Roth testified that Hutchins screamed, "Don't you fucking tell me what to do," in front of police officers and members of the public in a public area of the police station. (R. 60.) Roth stated that Hutchins's scream could be heard throughout the police station.
Under these particular facts, we conclude that Hutchins made "unreasonable noise" in the hallway of the courthouse, for which she was ultimately arrested. Such a restriction on "unreasonable noise" was a proper time, place and manner regulation of speech.
See Sterling v. State, supra. Thus, Hutchins's First Amendment right was not violated.
 III.
Hutchins contends that the trial court erred in limiting her direct examination of witnesses concerning her state of mind and intent at the time of the offenses. Specifically, she argues that the trial court should have permitted her to present testimony concerning the reasons for her behavior at the police station.
Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Ala.R.Evid.
Rule 403, Ala.R.Evid., states:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
A claim that there was a logical reason for acting in a disorderly manner does not establish a complete defense to disorderly conduct. SeeNikolic v. City of *Page 464 Montgomery, 441 So.2d 997, 1000 (Ala.Cr.App. 1983) (even though defendants' disorderly conduct occurred while they were attempting to legally apprehend "lawless patrons" in a local bar, the evidence was sufficient to establish disorderly conduct). Cf. Tally v. State,12 Ala. App. 314, 68 So. 567 (Ala.App. 1915) (in a prosecution for using obscene or insulting language to a woman, a defendant is not permitted to testify that he meant nothing offensive by his statements).
In this case, defense counsel attempted to elicit testimony from witnesses and from Hutchins concerning why Hutchins went to the police station and reacted angrily toward the police officers. Specifically, defense counsel attempted to elicit testimony that, shortly before the incident occurred, Hutchins was told by two friends that the police had arrested her parents and that a police officer had pushed her one-year-old child off a porch. The following occurred outside the presence of the jury:
 "MR. RADNEY [defense counsel]: I think that the words that were spoken to them that made them come to the police station are very relevant to both of their state of minds, but particularly the defendant's state of mind as to show how she acted when she gets here. In essence, the intent that she did have, and intent is a relevant, very necessary element to both of these crimes. And, if she intended to come check on the status of her baby or the status of her family, then [she] is not guilty of the crime charged. And therefore the words spoken that she heard out there are completely relevant.
 "If somebody comes in there, true or not, and says your baby has been dropped off a 10-story building and she comes running in here asking questions about the baby, I think that is 100% relevant as to how she acted when she got here.
 "THE COURT: That would be placing law and order in this City in the hands of the irresponsible — the people who are willing to say anything to get a rise. And the way to investigate at the police station is not to go off doing the kinds of stuff that's been described here. And, contrary to your assertion, I do not believe that in a thousand years that would constitute a defense to the kind of behavior that's been described.
"MR. RADNEY: I agree with you.
 "THE COURT: I think that if she — Nor do I think that you're free to go into that because it is hearsay.
"MR. RADNEY: I'm not offering it for the truth.
 "THE COURT: And there's no evidence of its truth. There is no evidence of its reasonableness. And, if every time a wily, unruly citizen gets a report that they don't like coming from the police office, they can go storming in and do what's been described in evidence here, that would be a heck of a state of the law.
 "What you're offering is hearsay. It's purely and simply hearsay. And it can't — you know, it can't go in as the basis for her actions."
(R.99-102.)
In this case, because Hutchins was charged with disorderly conduct and resisting arrest, the question for the jury was whether the appellant engaged in disorderly conduct and resisted an arrest. Because Hutchins did not claim that she was mentally ill at the time the incident occurred, her mental state was not at issue. Thus, her motivation for yelling in the police station was not relevant. Moreover, as previously discussed in Part I of this opinion, Billups testified that Hutchins was upset because she believed the police pushed her child off her parent's porch. Therefore, testimony from defense witnesses concerning Hutchins's motivation *Page 465 
would have been cumulative to Billups's testimony during the State's case. See Rule 403, Ala.R.Evid. Based on the foregoing, the trial court did not err in preventing the defense from eliciting testimony concerning Hutchins's reasons for engaging in disorderly conduct and resisting arrest.
 IV.
Hutchins maintains that she was improperly sentenced to serve six months' imprisonment for disorderly conduct.
Disorderly conduct is a Class C misdemeanor. § 13A-11-7(b), Ala. Code 1975. The maximum sentence for a Class C misdemeanor is three months. § 13A-5-7(a)(3), Ala. Code 1975.
Because Hutchins's sentence for disorderly conduct exceeds the maximum authorized by law, we remand this case for the trial court to sentence Hutchins in accordance with § 13A-5-7(a)(3), Ala. Code 1975. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days of the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
AFFIRMED AS TO CONVICTIONS AND AS TO SENTENCE FOR RESISTING ARREST; REVERSED AS TO SENTENCE FOR DISORDERLY CONDUCT; AND REMANDED WITH DIRECTIONS.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Testimony indicated that Hutchins's parents were arrested earlier that day and that they were being held at the police station at the time of the incident giving rise to the charges here.