COBB, Judge,
dissenting.
I respectfully dissent from the majority opinion, which reverses the adjudication of the Juvenile Court of Dale County finding H.N.P. to be a delinquent child based on a charge of disorderly conduct.
In addition to the facts set forth by the majority, the following ore tenus evidence was presented at the delinquency hearing. Deputy Sheriff Tim Byrd testified that in the early evening of October 16, 2001, he was dining with his wife and son at the El Palacio Mexican restaurant in Ozark. In his opinion, 16 to 18 other diners were in the restaurant. H.N.P. and a" companion entered the restaurant. Byrd stated that “[he’d] never seen [H.N.P. or her companion] before in [his] life” but that his wife recognized H.N.P. as a student at a local school from the wife’s job at the school. (R. 11) While dining, Byrd’s attention was drawn across the room to H.N.P. because, according to Byrd, H.N.P. began to talk on her cellular telephone in a loud voice saying, “ ‘Well, I don’t give a damn what they said, she showed her a — ’ ... and then used a couple more expletives in that sentence, four-letter words.” (R. 6.) According to Byrd, the other expletives being uttered by H.N.P. on the cellular telephone and “in the conversation with her friend” (R. 8) were “motherf-” and “f — .” (R. 8.) Realizing that the expletives being uttered by H.N.P. were embarrassing the diners in the restaurant, especially the elderly diners, Byrd “told [H.N.P.] [from] across the room [that] she needed to be quiet, you know, not speak like that in a public place.” (R. 6.) Byrd stated that because “[he] was just really trying to [quiet her] down,” (R. 11), he did not identify himself as a deputy sheriff. He said that at no time during the incident did he identify himself as a deputy sheriff.
From that point, H.N.P. “[quieted] down a little bit” but, according to Byrd, “she would look at [him] every now and then and give [him] a real hard look.” (R. 7.) According to Byrd, when H.N.P. walked by his table to go to the bathroom, he saw from the corner of his eye that “she flipped [him] off’ making an obscene gesture, and “just continued to act belligerent, like a pure idiot as far as [Byrd] was concerned.” (R. 7.) It is not entirely clear from the record, but it appears that after this occurrence, Byrd once again told H.N.P. “that she needed to be quiet.” (R. 7.) Also, Byrd testified that he walked with a limp. According to Byrd, as H.N.P. was leaving the restaurant she “mocked the way [he] walk[ed] and flipped [him] off, and [he] thought [he] heard [her say] f— you.” (R. 8.) Byrd stated that after H.N.P. left the restaurant, the elderly diners thanked him for asking H.N.P. to be quiet. However, according to Byrd, he was told by those diners that H.N.P. “really never quit, [she] just started talking where [Byrd] couldn’t hear [her]. But those people heard every word [she] said.” (R. 8.) Byrd also testified that because the diners close to H.N.P. had been so disturbed by H.N.P.’s conduct “[he] heard the waitress say that they didn’t need to pay.” (R. 9.)
At the conclusion of Byrd’s testimony, H.N.P. moved for a judgment of acquittal, arguing that her words did not constitute fighting words “in this particular case where it’s actually a juvenile saying the ... words to a police officer.” (R. 12.) H.N.P. argued that the words uttered must be fighting words to constitute disorderly conduct based on something a person said. The State argued that the motion was due to be denied because the profanity was spoken in a public restaurant, not just to a police officer. Based on the arguments, the juvenile court denied H.N.P.’s motion for a judgment of acquittal.
*634 H.N.P., who was 16 years old at the time of the incident, testified that Byrd and his family were already seated in the restaurant when she and her companion arrived. She stated that before going to the restaurant she had argued with her 12-year-old sister. While in the restaurant she received a telephone call on her cellular telephone from a friend of her sister’s. H.N.P. stated that during this conversation with her sister’s friend, she was angry about the situation with her sister and that she did use the phrase “showed her [a — ]” (R. 19), during the conversation and that she was probably “being loud on [her] cell phone. But [she] did not use any other cuss words.” (R. 20.) Moreover, she testified that she did not mock Deputy Byrd because she did not know Deputy Byrd walked with a limp. In that regard, she testified that she could not mock Byrd because she did not know him, that she “had never seen him before in [her] life,” (R. 17), and that, because he was seated when she arrived, she had never seen him walk.
At the conclusion of the hearing H.N.P. renewed her motion for a judgment of acquittal on the grounds previously stated. The juvenile court denied the motion and adjudicated H.N.P. a delinquent based on evidence of disorderly conduct.
“ ‘ “Where evidence is presented to the trial court ore terms in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995)....” “ ‘[Ex parte Agee,] 669 So.2d [102,] 104 [ (Ala.1995)].’ ”
State v. Thomas, 843 So.2d 834, 838 (Ala.Crim.App.2002)(quoting State v. Hill, 690 So.2d 1201, 1203 (Ala.1996)).[1]
I do not believe that the juvenile court’s ruling was clearly erroneous.
I believe that the disorderly-conduct statute was designed to protect people from using profane language in a public setting where such language would annoy or alarm people of ordinary sensibilities. The circumstances presented here are, I believe, exactly the type that the statute was meant to punish.
In Smith v. City of Anniston, 668 So.2d 96, 98 (Ala.Crim.App.1995), this court stated the following regarding disorderly conduct:
“The commentary to § 13A-11-7, Code of Alabama, 1975, makes it clear that this statute is designed ‘to protect the public from being annoyed, inconvenienced or alarmed.’ This section ‘encompasses the common law offenses of breach of the peace and disturbing the peace.’ Id. While it is clear that the statute requires that the offender intend to cause public inconvenience, annoyance, or alarm, or that the offender recklessly creates a risk thereof, such questions of intent are generally matters for the finders of fact. In the present case, because the appellant made the offensive comment, not only to the police officer, but also in the presence of other individuals who could hear and react, whether his conduct amounted to disorderly conduct was a question of fact for the jury. Where facts are presented *635 from which the jury could reasonably infer that the alleged crime has been committed, the question must be submitted to the jury. See generally, Brandon v. State, 542 So.2d 1316 (Ala.Cr.App. 1989). ‘The jury is then under a duty to draw permissible inferences from the circumstantial evidence presented and base its verdict accordingly.’ Id. at 1318.”
See also Ivey v. State, 710 So.2d 946, 947 (Ala.Crim.App.l998)(“[T]he appellant, using abusive language, yelled at ... his next-door neighbor. A number of [his neighbor’s] guests ... overheard the appellant’s language. Because there was sufficient evidence of the appellant’s disorderly conduct, the trial court properly submitted the case to the jury.”); Hutchins v. City of Alexander City, 822 So.2d 459, 462 (Ala.Crim.App.2000)(“[T]he State’s evidence established that Hutchins intended to cause public inconvenience, annoyance, or alarm, or that she recklessly created a risk thereof, by making unreasonable noise and by using abusive language in a public place. Thus, the trial court did not err in denying Hutchins’s motion for a judgment of acquittal.”); Pitts v. City of Auburn, 695 So.2d 236, 239 (Ala.Crim.App.l996)(“Based on the appellant’s act of repeatedly blowing his horn and shouting obscenities at Hill in an area where many people were nearby and causing a disturbance to the extent that people began to assemble in the road and in their yards, there was no error when the trial court denied the appellant’s motion for a judgment of acquittal.”).
Once the annoyance of her conversation was brought to her attention, H.N.P. clearly displayed an intent to annoy and disturb the other diners at the restaurant. Moreover, her intent was to annoy and disturb the patrons of the restaurant when she “flipped off’ Deputy Byrd. This is a classic situation of profanity being uttered in a public setting in order to disturb and annoy those within its hearing.
For these reasons, I believe the State presented sufficient evidence of disorderly conduct to support an adjudication of delinquency. Therefore, I respectfully dissent.

. ' “However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala. 1994)." ’ ” State v. Thomas, 843 So.2d at 838 (quoting State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995)).